**In The United States District Court**
**For the State of North Dakota**
**Eastern Division - Fargo, ND**

| | |
|---|---|
| Emerson J. Ree, | ) |
| | ) |
| | ) **COMPLAINT FOR** |
| | ) **DISCRIMINATION,** |
| Petitioner(s) | ) **RETALIATION, AND** |
| | ) **WRONGFUL TERMINATION** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| Vs. | ) Civil Action No.: |
| | ) |
| Belcourt School District #7 | ) |
| | ) |
| | ) |
| Defendant(s) | ) |

[P1]    Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act, alleging unlawful discrimination based on national origin and disability, and unlawful retaliation for filing a charge with the Equal Employment Opportunity Commission (EEOC).

## JURISDICTION AND VENUE

[P2]    This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 2000e-5, and 42 U.S.C. § 12117(a).

[P3]    Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in this district.

## PARTIES

[P4]    Plaintiff Emerson J. Ree is a member of the Crow Creek Sioux Tribe and a qualified individual with disabilities. Mr. Ree was an employee of the Belcourt School District #7 from 2008 to 2023.

[¶5]    Defendant Belcourt School District #7 is a public school district organized under the laws of the State of North Dakota, with its principal office located at 1207 William Hardesty Street, Belcourt, North Dakota 58316.

## STATEMENT OF FACTS

[¶6]    Plaintiff receives healthcare from VA Fargo Health Care System and has multiple documented disabilities, both physical and mental, that make them a qualified individual under the Americans with Disabilities Act. The Defendant knew of these disabilities as early as 2012.

[¶7]    Plaintiff was employed with the Defendant from 2008 to 2023 as a custodian and bus driver.

[¶8]    Plaintiff filed charges relating to discrimination with the Equal Employment Opportunity Commission (EEOC) 9 separate times between 2016 and 2024 due to the Defendant's conduct. One of these charges resulted in a settlement agreement in June of 2016.

[¶9]    Between 2012 and 2023 Plaintiff received at least 11 letters of warning or reprimand from supervisors or administration, many of which contained a threat of termination.

[¶10]    Between 2015 and 2023 there were 4 Suspected Child Abuse and Neglect (SCAN) Reports filed naming the Plaintiff as the alleged abuser. All were proven to be unsubstantiated by law enforcement and resulted in no criminal action against the Plaintiff.

[¶11]    Between 2012 and 2023 Plaintiff was suspended without pay on numerous occasions from 2012 to 2023, a majority of which took place between 2016 and 2017 while Mr. Ryan Keplin was his supervisor.

[¶12]    Plaintiff was terminated from employment on June 27, 2023 following an investigation stemming from a SCAN report filed on or about May 18, 2023. Mr. Ryan Keplin was named the investigator and provided his recommendation for termination.

## CLAIM 1: DISCRIMINATION IN VIOLATION OF TITLE VII AND THE ADA

[¶13]    Defendant engaged in a pattern of willful and malicious conduct toward the Plaintiff that was highly prejudicial and caused significant harm physically, mentally, emotionally, and financially. The discriminatory treatment the Plaintiff endured is rooted in either his national origin, as the only Crow Creek Sioux Tribe member employed by the Defendant, or his physical and mental disabilities. Much of this treatment reflects, at best, a failure to exercise appropriate judgement and sensitivity, and at worst, a blatant disregard for the Plaintiff's rights and well-being.

[¶14]   From 2010 to 2023, Plaintiff was subjected to a continuous pattern of discriminatory acts by Defendant. This conduct included, but was not limited to: denial of promotions, excessive scrutiny and disproportionate discipline for minor or routine errors, persistent harassment related to alleged non-performance of duties, repeated letters of warning and reprimand that included threats of termination, unwarranted over-monitoring and surveillance of Plaintiff's activities, and multiple suspensions without pay based solely on hearsay and false allegations.

[¶15]   Defendant engaged in a pattern of mischaracterizing events in a manner that cast the Plaintiff in a negative light. Incidents involving the Plaintiff were routinely reframed or exaggerated to support disciplinary measures and investigations were often conducted without transparency and without the Plaintiff's input. This combination of biased narrative-building, exclusion from due process, and predetermined conclusions created a hostile work environment and served as pretext for discriminatory and retaliatory actions against the Plaintiff.

[¶16]   Throughout the course of Plaintiff's employment, Defendants engaged in a pattern of falsely characterizing Plaintiff's demeanor and actions in a manner designed to cast Plaintiff as aggressive, angry, or otherwise unfit for the workplace. These mischaracterizations were not based on actual behavior, but rather on biased perceptions, unfounded assumptions, and deliberate efforts to build a record of misconduct. Even minor disagreements, misunderstandings, or requests for clarification were exaggerated or reframed as confrontational or insubordinate.

[¶17]   This pattern of character distortion not only undermined Plaintiff's reputation among coworkers and the community but also served as pretext for ongoing disciplinary action. The intent and effect of these portrayals were to discredit Plaintiff, isolate him socially and professionally, and ultimately justify adverse employment actions, including termination. These portrayals were especially damaging given Plaintiff's status as the only employee of Crow Creek Sioux descent, and they reflect a broader pattern of discriminatory treatment rooted in racial and cultural bias.

[¶18]   Rather than addressing Plaintiff's disabilities and related symptoms with care, Defendants responded with unjustified harshness and punitive action. Despite being aware of Plaintiff's documented physical and mental health conditions, Defendants failed to engage in any meaningful interactive process to evaluate or implement reasonable accommodations. Instead, workplace challenges connected to Plaintiff's disabilities were misinterpreted, or willfully ignored, and treated as misconduct, insubordination, or poor performance.

[¶19]   At no point did Defendant offer support, flexibility, or empathy. Instead, Plaintiff's legitimate needs were met with increased scrutiny, disproportionate disciplinary measures, and isolation. This failure to respond appropriately to known disabilities demonstrates either a severe lack of judgment and sensitivity, or a deliberate disregard for Plaintiff's rights under federal law. As a result, Plaintiff was placed in an untenable work environment where disability-related symptoms were punished rather than accommodated, exacerbating Plaintiff's conditions and contributing directly to emotional distress and financial harm.

[¶20]   One staff member in particular, Mr. Ryan Keplin, exhibited a consistent pattern of hostility and bias toward Plaintiff throughout his employment. This individual was responsible for issuing the majority of Plaintiff's letters of warning, made several threats of termination, and frequently acted in a combative and aggressive manner toward the Plaintiff. Notably, during the period between 2019 and 2021, when this individual was not serving as Plaintiff's direct supervisor, Plaintiff received little to no formal discipline and maintained a stable working relationship with other staff. However, once this individual resumed supervisory authority over Plaintiff, the pattern of hostility and disciplinary action returned almost immediately. This stark contrast highlights the discriminatory nature of the conduct and underscores the personal bias that influenced Plaintiff's treatment.

[¶21]   Despite this demonstrated prejudice, the same individual was later assigned as the investigator of a SCAN report that Defendant used as the basis for Plaintiff's termination in June 2023. The decision to place this biased actor in a position of investigative authority violated principles of neutrality and fairness and contributed directly to the discriminatory and retaliatory termination of Plaintiff's employment. His involvement in that process undermined any appearance of fairness or objectivity and further demonstrates that the termination was the result of long-standing discriminatory and retaliatory motives.

## CLAIM 2: RETALIATION

[¶22]   Defendants retaliated against Plaintiff for engaging in protected activity under Title VII and the ADA. Plaintiff filed a charge of discrimination with the EEOC in May of 2016, after which the Defendant ceased adverse conduct temporarily. However, following the resolution of that charge and execution of a settlement agreement, Defendants resumed their hostile and punitive conduct; issuing unwarranted disciplinary actions and ultimately terminating Plaintiff's employment. This course of conduct constitutes unlawful retaliation in violation of federal law.

[¶23]   Preceding the filing of a discrimination charge to the EEOC in May of 2016, Mr. Ryan Keplin issued letters of warning or reprimand to Plaintiff 5 times on the following dates: August 7, 2015, October 7, 2015, February 10, 2016, May 4, 2016, May 4, 2016. Three of these letters of warning included a threat of termination.

[¶24]   The letter of warning from February 10, 2016 was accompanied by a suspension without pay, per Mr. Keplin's request to the acting superintendent at the time, Mr. Keith Lavallie, the very next day on February 11, 2016. In this letter, Mr. Keplin not only requests a suspension without pay but also a removal from the high school building and transfer to another work environment. The letter to Mr. Lavallie ends: **"If this type of behavior continues while under my supervision, I will have no choice but to move toward immediate termination."**

[¶25]   Following the filing and notice of this discrimination charge nearly all disciplinary action ceased until a SCAN report was filed on or about September 21, 2016.

## CLAIM 3: UNLAWFUL TERMINATION

[¶26]   Plaintiff was terminated from his position with the Belcourt School District #7 on June 21, 2023 through a vote from the Belcourt School Board and at the behest of Mr. Ryan Keplin's recommendation.

[¶27]   The termination was not based on legitimate or non-discriminatory grounds, but was the result of ongoing discrimination on the basis of Plaintiff's national origin as a Crow Creek Sioux tribal member and his disabilities, as well as unlawful retaliation for engaging in protected activity.

[¶28]   Defendant was aware of Plaintiff's disabilities and tribal affiliation throughout the course of his employment.

[¶29]   Plaintiff had filed a formal charge of discrimination multiple times with the EEOC, one of which resulted in a settlement agreement in which Defendant agreed to refrain from discrimination and retaliation.

[¶30]   Following the closure of the charge from 2016, Defendant resumed a pattern of adverse treatment through renewed disciplinary action, including another suspension without pay due to unsubstantiated allegations from a SCAN report, and the assignment of a previously hostile supervisor to conduct an internal investigation.

[¶31]   The investigation that led to Plaintiff's termination lacked transparency and objectivity, relied heavily on hearsay, and excluded Plaintiff's version of events.

[¶32]  Mr. Ryan Keplin had a documented history of disproportionate disciplinary actions against Plaintiff, including multiple threats of termination, multiple interpersonal confrontations, and repeated efforts to cast Plaintiff in a negative light.

[¶33]  The termination was the final act in a broader pattern of discriminatory and retaliatory conduct. Defendants actions in terminating Plaintiff were unlawful under Title VII and the Americans with Disabilities Act.

## <u>REQUEST FOR RELIEF</u>

[¶34]  **WHEREFORE**, Plaintiffs requests Judgement as follows:

[¶35]  Award Plaintiff back pay, including lost wages, benefits, and other compensation that Plaintiff would have earned absent the discrimination and / or retaliation

[¶36]  Award Plaintiff compensatory damages for emotional distress, pain and suffering, and other non-economic losses resulting from Defendant's unlawful conduct.

[¶37]  Order reinstatement of Plaintiff's former position, or front pay in lieu of reinstatement, if appropriate

[¶38]  Award Plaintiff reasonable attorney's fees and court costs

[¶39]  Grant any further relief that the Court deems just and proper

Dated this ____6____ day of ____June____, 2025

Respectfully submitted,

Emerson J. Ree
PO BOX 2135
Belcourt, ND 58316
701-550-7810